DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| GEOMAT & SONS, INC.<br><br>    Plaintiff,<br><br>    vs.<br><br>HONG KONG AND SHANGHAI<br>BANKING CORPORATION LTD.,<br><br>    Defendant. | Civil Case No. 10-00001<br><br><br><br>**ORDER RE: DEFENDANT'S<br>MOTION TO DISMISS** |

This case is before the court on the Defendant, Hong Kong and Shanghai Banking Corporation, Ltd.'s Motion to Dismiss Amended Complaint. Docket No. 26. Pursuant to Local Rule 7.1(e)(3), this matter is appropriate for decision without the need for oral argument.[1] After reviewing the parties' submissions, as well as relevant caselaw and authority, the court **GRANTS** the Defendant's motion in the alternative and **HEREBY STAYS** the action for the following reasons.[2]

## **I. FACTUAL BACKGROUND**

On or about August 9, 1995, Hong Kong and Shanghai Banking Corporation, Ltd. ("HSBC") and Kallingal, P.C. (together with a business entity named "GK Joint Venture"), entered into a loan

---

[1] Local Civ.R. 7.1(e)(3) states "[i]n cases where the parties have requested oral argument, such oral argument may be taken off calendar by Order of the Court, in the discretion of the Court, and a decision rendered on the basis of the written materials on file."

[2] In its Reply, the Defendant moved in the alternative, to stay the proceedings under the doctrine of abstention.

agreement to finance the construction of a 18,000 sq. ft. mall known as the Monticello Plaza, located next to Cost-U-Less. *See* Docket No. 26, Declaration of Joyce C.H. Tang ("Tang Decl."), Exh. B. The loan was secured by, among other things, a Note, a Mortgage on the Barrigada Property executed by Kallingal, P.C. in favor of HSBC, and personal guarantees made by Drs. George and Matilda Kallingal (collectively "Loan Documents"). *Id.*, Exh. C.

Thereafter, Kallingal P.C. defaulted on the loan payments, and the parties entered into settlement or forbearance negotiations. *See HongKong & Shanghai Banking Corp. v. Kallingal ("HSBC"),* 2005 Guam 13, ¶¶ 2-15. Dr. George Kallingal signed a letter agreement with HSBC dated October 24, 2002 ("Workout Agreement"), which set forth alternative repayment obligations under the loan in light of the default. *See* Docket No. 26, Tang Decl., Exh. D. HSBC alleges that it intended the letter agreement to be a general statement of the basic repayment terms and not a final agreement, and that a later formal forbearance agreement would be executed by the parties to the Loan Documents setting forth the repayment terms and necessary and required terms. *See HSBC,* 2005 Guam 13, ¶ 14.

Drs. George and Matilda Kallingal (the "Kallingals") failed to execute the forbearance agreement, and HSBC consequently filed an action in the Superior Court of Guam against them to collect under their personal guarantees. *See* Docket No. 26, Tang Decl., Exh. B. The Superior Court case was docketed as Civil Case No. 89-03. *Id.* The Kallingals filed an Answer and Counterclaim on February 19, 2003, arguing in their counterclaim that they and HSBC entered into an October 24, 2002 letter Workout Agreement which modified the terms of the loan, and that HSBC breached the Workout Agreement by interfering with the Kallingals' attempts to seek dismissal of a then-pending bankruptcy action, by proceeding with foreclosure of the property securing the loan when the property was needed by the Kallingals to pay its obligations to HSBC, and by suing the Kallingals on the guarantees. *See* Docket No. 15, Tang Decl., Exh. E.

In addition to filing the complaint in the Superior Court on the guarantees, HSBC sought to foreclose on the Barrigada Property, by private sale. *See HSBC,* 2005 Guam 13, ¶ 14. In response to the foreclosure notice, the Kallingals moved in the Superior Court for a preliminary injunction to stop the foreclosure. *Id.,* ¶¶ 14-15. The Superior Court granted the Kallingals a preliminary

injunction, which HSBC thereafter appealed to the Guam Supreme Court. *Id.* The Supreme Court affirmed the lower court's decision in an opinion issued on August 30, 2005. *Id.*

After the appeal, HSBC filed a Supplemental Complaint in the Superior Court, bringing in as a new party Kallingal, P.C., alleging the Kallingals' actions arising after the suit was filed constituted a default under the original loan documents as well as the Workout Agreement (which was an agreement that the Kallingals insisted, over the objection of HSBC, was enforceable and modified the parties' original loan agreements). *See* Docket No. 15, Tang Decl., Exh. F. In the Supplemental Complaint, HSBC alleged a cause of action against Kallingal, P.C. seeking acceleration of the loan and judicial foreclosure of the Mortgage on the Barrigada Property, as well as a cause of action against the Kallingals under the personal guarantees. *Id.* The Kallingals filed a counterclaim to the Supplemental Complaint, seeking declaratory relief against the parties' rights under their agreements relating to the loan, damages for breach of the Workout Agreement regarding payment under the loan, and for the compensatory and punitive damages based on tort. *See* Docket No. 15, Tang Decl., Exh. G.

Thereafter, and while the case was still pending in the Superior Court, HSBC filed a notice of nonjudicial foreclosure on the Barrigada Property based on a new default under the loan, and the Workout Agreement, which occurred after the Supplemental Complaint was filed. *See* Docket No. 15, Tang Decl., Exh. H. In response, the Kallingals filed a motion for a TRO and preliminary injunction seeking to prevent HSBC from foreclosing on the property. *Id.*, Exh. I. After lengthy briefing on the motion, and hearing, the Superior Court issued a Decision and Order on August 4, 2009, granting the Kallingals' motion for a preliminary injunction prohibiting HSBC from foreclosing on the property for one year, and directing the Kallingals to make certain payments toward the loan balance. *Id.*, Exh. J.

The Kallingals appealed the Superior Court's August 4, 2009 Decision to the Supreme Court. *See* Docket No. 15, Tang. Decl., Exh. K. The Kallingals submitted a statement of issues in the appeal, one of which was the validity of the Barrigada Mortgage in light of the Workout Agreement. *Id.,* Exh. L. HSBC filed a motion to dismiss the appeal on the ground that the decision appealed from was an interlocutory order over which the Supreme Court lacked jurisdiction. *Id.*, Exh. M. The

Supreme Court granted the motion in an order issued on May 7, 2010. *Id.*

After filing the appeal in the Supreme Court, on January 12, 2010, the Plaintiff herein, Geomat & Sons, Inc. ("Geomat"), represented by attorney Ron Moroni ("Attorney Moroni") filed the present suit in this court. Throughout the proceedings in the local courts, the Kallingals have argued that the Workout Agreement was a novation that superseded and cancelled the Barrigada Mortgage.[3] This is the same issue in which Geomat seeks a declaratory judgment in its amended complaint filed in this case. *See* Docket No. 25. In addition, HSBC has asserted a claim seeking judicial foreclosure of the Mortgage on the Barrigada Property in the Superior Court of Guam case. Again, with the filing of an amended complaint by Geomat there is a concurrent and competing quiet title over the same Barrigada Property in this case.

HSBC now seeks to dismiss the Amended Complaint before this court on the basis of prior exclusive jurisdiction, or alternatively, to dismiss or stay these federal proceedings under the doctrine of abstention.

## II. PROCEDURAL BACKGROUND

Geomat initiated this case by filing its complaint on January 12, 2010. Docket No. 1. The Defendant named in the Complaint is HSBC. *Id.* HSBC filed its answer on February 22, 2010. Docket No. 11.

On June 11, 2010, HSBC filed a Motion to Dismiss. Docket No. 14. On July 29, 2010, Geomat filed its Opposition to the Motion. Docket No. 20. HSBC filed its Reply on August 6, 2010. Docket No. 23.

On July 29, 2010, Geomat also filed a First Motion to Amend/Correct Complaint. Docket No. 19. Therein, Geomat sought to correct the captioned name from Geomat, Inc. to Geomat & Sons, Inc. and to add an Exhibit A which was mistakenly not attached to the initial Complaint. This motion was granted by the Magistrate Judge on September 13, 2010. Docket No. 24. And, Geomat

---

[3] HSBC points out that neither Kallingal, P.C. nor the Kallingals have ever once in the local proceedings, in its various arguments challenging the validity of the Barrigada Mortgage or the claims asserted against them by HSBC, raised the fact that Kallingal, P.C. transferred the Barrigada Property to Geomat & Sons, Inc. *See* Docket No. 15, Tang Decl., at ¶ 5.

filed its Amended Complaint on September 21, 2010 reflecting the corrected name. Docket No. 25.

Because the motion to dismiss as to the original complaint was rendered moot, HSBC filed a Motion to Dismiss the Amended Complaint. Docket No. 26. On October 18, 2010, Geomat filed its Opposition. Docket No. 27. HSBC filed its Reply on October 25, 2010. Docket No. 30.

### III. JURISDICTION AND VENUE

All of Geomant's causes of action are within the court's diversity jurisdiction. *See* 28 U.S.C. § 1332; *see also* Docket No. 25 at ¶¶3 and 4. Jurisdiction should depend on the facts when the complaint was filed. *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957).

Venue is proper in this judicial district, the District of Guam, because all of the events or omissions giving rise to Plaintiff's claims occurred here. *See* 28 U.S.C. § 1391.

### IV. ANALYSIS

#### A. "Prior Exclusive Jurisdiction"

HSBC argues that this action should be dismissed because there is an *in rem* foreclosure action in the Superior Court giving it exclusive jurisdiction to proceed in this matter. Docket No. 26.

The doctrine of prior exclusive jurisdiction prohibits a court from "assuming in rem jurisdiction over a res that is already under the in rem jurisdiction of another court." *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1145 (9th Cir. 1989). The purpose of the doctrine is twofold; first "to protect the judicial processes of the court first assuming jurisdiction" *Penn Gen. Cas. Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935) and second, to promote comity between courts and to avoid the "logical and practical difficulty of two courts simultaneously vying for possession or control of the same property." *United States v. $79,123.49*, 830 F.2d 94, 97 (7th Cir.1987). "The jurisdiction of one court must of necessity yield to the other." *Penn General*, 294 U.S. at 195.

The Supreme Court expressed the rule in these terms:

> [I]f the two suits are in rem or quasi in rem, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other. To avoid unseemly and disastrous conflicts in the administration of our dual judicial system, . . . and to protect the

> judicial processes of the court first assuming jurisdiction, . . . the principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other. (Citations omitted.)

*Penn General*, 294 U.S. at 195.

In the present case the two suits relate to substantially the same subject matter. When this action was filed in this court, HSBC had already commenced a "foreclosure action" in the Superior Court of Guam. Without serious question, a proceeding to foreclose upon a mortgage is an action *in rem* or *quasi in rem*.[4] *See e.g. Ridgway v. Salrin*, 105 P.2d 1024, 1027 (Cal. Dist. Ct. App. 1940) ("It has been uniformly held in California that the foreclosure of a mortgage is, in its nature, a proceeding in rem against the mortgaged property, . . .."); *ABN AMRO Mortg. Group, Inc. v. McGahan,* 931 N.E.2d 1190, 1196 (Ill. 2009) ("Consistent with the foregoing authorities, we conclude that a mortgage foreclosure proceeding must be deemed a *quasi in rem* action. One of the pivotal differences between *in rem* and *quasi in rem* actions is whether the defendant is the property or a named person."); *In re St.Clair*, 251 B.R. 660, 668 (Bankr. D.N.J. 2000) ("Under New Jersey law '[a] foreclosure action is purely quasi-in-rem, affording relief only against the secured property.'"); *P.I.E. Employees Federal Credit Union v. Bass*, 759 P.2d 1144, 1150, n.4 (Utah 1988) ("A proceeding to foreclose upon a mortgage is considered an action *in rem* or *quasi in rem* under Utah law.").

**B. Whether the Supplemental Complaint was Properly Served.**

Geomat claims the doctrine of "prior exclusive jurisdiction" does not apply because Kallingal, P.C. was never brought into the Superior Court of Guam case. Additionally, it claims that the Superior Court has never asserted jurisdiction over the Barrigada Property.

When the Superior Court case was filed on January 30, 2003, HSBC only named the Kallingal as defendants. *See* Docket No. 20, Exh. 1. Kallingal P.C., the corporation which owned

---

[4] An "action *in rem*" is defined as "an action determining the title to property and the rights of the parties, not merely among themselves, but also against all persons at any time . . ." Black's Law Dictionary 34 (9th ed. 2009). An "action *quasi in rem*" is defined as "an action brought against the defendant personally, with jurisdiction based on an interest in property, the objective to deal with the particular property or to subject the property to the discharge of the claims asserted." *Id.*

Page 6 of 19

the Barrigada Property at the time was not named. In addition, the initial complaint did not contain a claim for judicial foreclosure. *Id.*

Two years later, in November 2005, HSBC moved to file a Supplemental Complaint to add parties and additional claims in the Superior Court.[5] *See* Docket No. 20, Exh. 2. Attorney Ron Moroni, who represented the Kallingals filed a non-opposition to the motion. *See* Docket No. 30, Exh. A. The Superior Court granted the motion, and allowed HSBC to file its Supplemental Complaint. Geomat claims that HSBC, however, never issued a summons with respect to the Supplemental Complaint and never actually brought Kalllingal P.C. in as a defendant in the case.

Geomat's counsel, Attorney Moroni, states that he was unable to find any indication in his own files that a summons had been issued or ever served on Kallingal P.C. *See* Docket No. 20, Declaration of Ron Moroni ("Moroni Decl."), ¶¶ 8-9. Moreover, the docket report does not indicate that any summons was ever issued with respect to the Supplemental Complaint or that any process was ever served on Kallingal P.C. *See* Docket No. 21, Moroni Decl., Exh. 6.

On January 3, 2006, Attorney Moroni filed an Answer to the Supplemental Complaint. *See* Docket No. 20, Moroni Decl., Exh. 3. Geomat claims that Attorney Moroni only filed an answer on behalf of the individual defendants, Drs. George and Matilda Kallingal. Geomat asserts that counsel neither answered nor entered an appearance on behalf of Kallingal P.C. Throughout the remainder of the litigation in the Superior Court, the Kallingals continued to appear by counsel, Attorney Moroni.

Geomat contends there was never an appearance made by Kallingal P.C. because it was not properly served. For example, an "Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction" filed by Defendants Drs. George and Matilda Kallingal on April 23, 2009, did not mention Kallingal P.C. *See* Docket No. 20, Moroni Decl., Exh. 4. On September 1, 2009, the Kallingals filed a "Notice of Appeal." *Id.*, Exh. 5. Again, Geomat contends that the appeal was only on behalf of the Kallingals.

---

[5] Specifically, HSBC added "the George and Matilda Kallingal, P.C." as a party and added mortgage foreclosure claims. *See* Docket No. 20, Opposition, Exh. 2.

The Superior Court only obtains jurisdiction over parties properly served with a summons and complaint:

> **7 GCA § 14108. When Jurisdiction of an Action is Acquired.**
>
> From the time of the service of the summons and of a copy of the complaint in a civil action, where service of a copy of the complaint is required, or of the completion of the publication when service by publication is ordered, the court is deemed to have acquired jurisdiction of the parties, and to have control of all the subsequent proceedings. ... The voluntary appearance of a defendant is equivalent to personal service of the summons and a copy of the complaint upon him.

The Supreme Court of Guam has held that it adopts a "rule of strict compliance of statutory service requirements." *Pineda v. Pineda*, 2005 Guam 10, ¶ 18 ("[W]e join the majority of jurisdictions that have adopted a rule of strict compliance of statutory service requirements.").

Geomat claims that under the Guam Rules of Procedure,[6] Rule 4(m) HSBC had 180 days from the filing of the Supplemental Complaint, to serve a copy of the Complaint and Summons on Kallingal P.C. Rule 4(m) provides:

> **Time Limit for Service.** If service of the summons and complaint are not made upon a defendant within **180 days** after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effectuated within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service an appropriate period. (Emphasis added).

Guam R. Civ. P. 4(m).

Additionally, Geomat argues that its conclusion is consistent with HSBC's actions since the filing of its Supplemental Complaint. For example, the Supplemental Complaint was filed almost five years ago. Yet since that time, HSBC has made no attempt to move forward with a "judicial" foreclosure of the property. Rather, in 2009, HSBC filed a notice of nonjudicial foreclosure on the Barrigada Property.[7] *See* Docket No. 15, Tang Decl., Exh. H. Geomat states that this confirms that

---

[6] The Guam Rules of Civil Procedure were based on the Federal Rules of Civil Procedure. *See Hart v. Hart*, 2008 Guam 11 ¶ 12 (2008) (recognizing that has Guam uses a "rules of civil procedure based system that . . . is based on a framework of the Federal Rules of Civil Procedure.")

[7] **Judicial Foreclosure** is defined as "[a] costly and time consuming foreclosure method by which the mortgaged property is sold through a court proceeding requiring many standard legal steps such as the filing of a complaint, service of process, notice, and a hearing. Black's Law Dictionary 719 (9th ed. 2009).

even HSBC recognized that there was no judicial foreclosure action pending in the Superior court. If there was, HSBC's attempt at nonjudicial foreclosure would have been an improper interference with the court's jurisdiction over the property. "An election of remedies must be made between judicial foreclosure and nonjudicial foreclosure." *Thurman v. Fed. Deposit Ins. Corp.*, 889 F.2d 1441, 1445 (5th Cir. 1989) rehearing denied.

Therefore, Geomat argues that the doctrine of "prior exclusive jurisdiction" does not apply because the action in the Superior Court case remains an *in personam* action against the Kallingals. It is not an *in rem* procedure against Kallingal P.C. or against the Barrigada property because no summons had ever been issued or served on the corporation or the property.

In reply, HSBC challenges Geomat's statement that Kallingal, P.C. was never served. Attorney Moroni has always represented to the court and to HSBC's counsel he represented the Kallingals personally, as well as Geomat and Kallingal P.C. *See* Docket No. 30, Tang. Decl, at ¶ 3. In addition to the representations made to the court, Attorney Moroni signed numerous documents as the attorney representing all of the "Defendants" and affirmatively stating that he represents Kallingal P.C. For example:

1. 9/12/05      Letter from Attorney Moroni to Ms. Tang stating "[i]t seems to me that under the agreement, **Kallingal P.C.** was obligated to make payments each month of $8,000.00 Their checks constituted an offer of performance and fulfilled the obligation." *See* Docket No. 30, Tang. Decl., Exh. B.

2. 1/16/06      *Ex Parte* Motion for Protective Order and to Quash Subpoena"– "GEOMAT, Inc. and Defendants, Dr. George Kallingal and Dr. Matilda Kallingal, and **Kallingal, P.C.,** hereby moves this court...." *See* Docket No. 30, Tang. Decl., Exh. C at 1.

3. 2/24/06      Motion to Preclude Evidence filed by Attorney Moroni on behalf of the Kallingals and the Kallingal, P.C.– "**Defendants**, hereby move this court for an order pursuant to Rule 37(d) . . . ." *See* Docket No. 30, Tang. Decl., Exh. D at 1.

4. 6/6/06      Mem. of Points and Authority in Support of Defendants Second Motion to Preclude Evidence – "On February 01, 2006, the **Defendants** served on

---

**Nonjudicial or Power-of-Sale Foreclosure** is defined as "[a] foreclosure process by which, according to the mortgage instrument and a state statute, the mortgaged property is sold at a nonjudicial public sale by a public official, the mortgagee, or a trustee, without the stringent notice requirements, procedural burdens, or delays of a judicial foreclosure. Black's Law Dictionary 719 (9th ed. 2009).

|   |   |   |
|---|---|---|
| 1 |  | Plaintiff a notice of deposition to Rule 30(b)6." *See* Docket No. 30, Tang. Decl., Exh. E at 1. |
| 2 | 5. 11/29/06 | Decision and Order re: HSBC's Ex Parte Motion to Compel Compliance with Court's Order for Production of Documents– "Attorney Ronald P. Moroni appeared on behalf of Defendants, Dr. George Kallingal, Dr. Matilda Kallingal, and the **George and Matilda Kallingal, P.C."** *See* Docket No. 30, Tang. Decl., Exh. F at 1. |
| 3 | 6. 12/6/06 | Motion to Strike Affidavits filed by Attorney Moroni– "**Defendants,** hereby move this court to strike all affidavits, declarations . . . ." *See* Docket No. 30, Tang. Decl., Exh. G at 1. |
| 4 | 7. 8/4/09 | Decision and Order re: Defendants' Motion to Supplement Complaint and Motion for Continued Temporary Restraining Order – "Attorney Ron Moroni appearing on behalf of the **Defendants."** *See* Docket No. 30, Tang. Decl., Exh. H at 1. |

Not only have there been representations in the Superior Court case that Attorney Moroni represented Kallingal P.C. but the Supreme Court of Guam has issued an opinion recognizing said representation. The Supreme Court, in reciting the factual record and particularly the parties' dealings with regard to the loan and mortgage, stated "[i]n a November 22, 2002 letter, Mr. Moroni, who by then had been hired to represent both the Kallingal P.C. and the Kallingals personally, agreed to the terms of what is now called the 'second workout agreement.'" *HSBC,* 2005 Guam 13, ¶ 10. Furthermore, the Guam Supreme Court detailed the various arguments set forth by Kallingal P.C. as folows:

> HSBC asserts that the Forbearance Agreement merely embodied the terms of the settlement agreement that the parties had already agreed upon, while Kallingal P.C. contends that the Forbearance Agreement contained materially different terms such as to materially alter the agreement between the parties. Kallingal P.C. argues it was simply complying with the terms of its version of the Settlement Agreement, which the Bank then breached.

*Id.* at ¶ 28.

HSBC asserts that since the initiation of the Superior Court case in 2003, and at all relevant times thereafter, it was understood by the parties and the court that Attorney Moroni represented the Kallingals, personally, as well as Kallingal, P.C. It was apparent to the lower court and to HSBC that Attorney Moroni's filing of a non-opposition to HSBC's motion to supplement the complaint, to add Kallingal, P.C. as a party and to add the mortgage foreclosure claims, was on behalf of his clients the Kallingals and Kallingal, P.C.

This relationship is evident from an Order issued on December 22, 2005, wherein the Superior Court of Guam granted HSBC's motion to supplement the complaint:

Therefore, IT IS ORDERED that:

1. The Plaintiff HSBC is granted leave to file a supplemental complaint in substance and for as set forth in the proposed supplemental pleading attached to the Motion.

**2. The Defendants the Kallingal P.C. and Drs. George and Matilda Kallingal shall have 20 days after service of the Supplemental Complaint within which to file an answer.** (Emphasis added).

*See* Docket No. 30, Tang. Decl., Exh. I.

The Order did not direct HSBC to serve a summons on the Kallingals or Kallingal, P.C. The Order only required HSBC to serve the Supplemental Complaint on the Defendants. A summons directs a party to file an answer and the Order by the Superior Court did just that– it directed the Defendants to file an answer within 20 days of service of the Supplemental Complaint. HSBC states that it served the Supplemental Complaint on the Kallingals and Kallingal, P.C. through their attorney, Attorney Moroni. *See* Docket No. 15, Tang. Decl., Exh. F. There is no indication that Attorney Moroni refused to receive service of the Supplemental Complaint on behalf of his clients the Kallingals or Kallingal, P.C.

Moreover, after being served with the Superior Court's December 22, 2005 Order and Supplemental Complaint, Attorney Moroni filed an answer to the Supplemental Complaint on January 4, 2006. *See* Docket No. 15, Tang. Decl., Exh. G. The Answer was presumably filed in response to service of the Supplemental Complaint on him. Additionally, in the Answer, the Defendants did not at any time mention that they were contesting service, whether on behalf of the Kallingals or Kallingal P.C. "Defendants can waive the defect of lack of personal jurisdiction by appearing generally without first challenging the defect in a preliminary motion, or in a responsive pleading. Jurisdiction attaches if a defendant makes a voluntary general appearance, as by filing an answer through an attorney." *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1976) (citations omitted).

After reviewing the filings, the court finds that the Superior Court had jurisdiction over Kallingal, P.C. because the amended complaint was either properly served or, if not properly

served, Kallingal, P.C. waived any defect in service or personal jurisdiction by appearing generally and by not raising this defense in earlier proceedings. "It is uniformly recognized that instances where service has been declared jurisdictional, (such as personal service of a complaint or summons), a defect in personal service can be waived." *Long-Term Bank of Japan v. Superior Court of Guam*, 2003 Guam 10, at ¶ 43 (citing *City of S. Pasedena v. Mineta*, 284 F.3d 1154, 1156 (9th Cir .2002) ("[M]ost jurisdictional objections-such as defects in personal jurisdiction, venue or service of process-are waived unless asserted early in the litigation.") (citations omitted)).[8]

In addition, Guam Rules of Civil Procedure 5 requires that all pleadings filed subsequent to the original complaint be served on each party. *See* Guam R. Civ. P. 5(a). The rule further requires that service under Rule 5 must be made on the attorney if a party is represented by an attorney unless the court orders that service be made on the party itself. *See* Guam R. Civ. P. 5(b)(1).[9] The Superior Court's December 22, 2005 Order required that the Kallingals and Kallingal P.C. answer the Supplemental Complaint within 20 days after service of the Supplemental Complaint upon them. The Order did not specify that the service be made personally on the parties. Accordingly, service on their attorney Mr. Moroni was permitted, and was in fact required under Guam Rules of Civil Procedure 5(b)(1).

Moreover, in their Answer, the Defendants specifically responded to Count Four of the Supplemental Complaint, namely, the claim for foreclosure of Kallingal P.C.'s Mortgage. *See* Docket No. 15, Tang. Decl., Exh. G. In responding to the Supplemental Complaint, including the claim for judicial foreclosure on the Barrigada Property, the Defendants' Answer was in fact filed by Attorney Moroni on behalf of all the Defendants named in the Supplemental Complaint. The

---

[8] The court finds counsel's arguments disingenuous and is dismayed with Attorney Moroni's representation that he was not acting as counsel on behalf of Kallingal P.C.

[9] **Rule 5. Service and Filing of Pleadings and Other Papers.**

(b) Making Service.

(1) Service under Rules 5(a) and 77(d) on a party represented by an attorney is made on the attorney unless the court orders service on the party.

record establishes that Attorney Moroni represented all Defendants and acted with regard to all throughout the local proceedings. *Id.,* at Exhs. A-H.

Additionally, in their answer to the Supplemental Complaint, the Defendants filed a counterclaim against HSBC, and in the allegations specifically stated that they, the Defendants, were not obligated under the note, mortgage, or loan documents. *See* Docket No. 15, Tang. Decl., Exh. G. Since Kallingal, P.C. was the party that executed the note, mortgage and loan agreements, presumably the "defendants" that were responding to the Supplemental Complaint included Kallingal, P.C.

To further highlight this point is the fact that HSBC filed a motion for summary judgment in the Superior Court on all counts of the Supplemental Complaint, including the claim to foreclose the mortgage held on the Barrigada Property. *See* Docket No. 30, Tang Decl., Exh. K. In their opposition to the motion the Defendants did not claim or assert that the foreclosure claim was non-existent due to any jurisdictional defect with regard to service of the Supplemental Complaint. *Id.*, Exh. L.

Instead of objecting to personal jurisdiction over Kallingal, P.C., the Answer to the Supplemental Complaint responded to the foreclosure claim, the Counterclaim filed in response to the Supplemental Complaint questioned whether the note, mortgage and loan documents were valid as against the Defendants, and later in response to HSBC's summary judgment motion on the foreclosure claim, the Defendants failed to raise any defect in personal jurisdiction with regard to the foreclosure claim. *See* Docket No. 30, Tang Decl., Exh. L. Under these circumstances, Kallingal P.C. clearly waived any defect as to personal jurisdiction. *Taitano v. Lujan*, 2005 Guam 26, ¶¶ 24-25 ("[The defendant's] failure to promptly raise the issue of personal jurisdiction, the participation of [the defendant] in the lawsuit, his submission to the ultimate judgment of the court, and his defense in this appeal of that judgment, constitutes a waiver of the affirmative defense of personal jurisdiction.").

**C. Was Service on Kallingal, P.C.'s Attorney Proper Service Under Guam Rules of Civil Procedure, Rule 4.**

HSBC argues that not only was service proper under Guam R. Civ. P. 5(b)(1), as previously

discussed, but under the circumstances, it was also proper under Guam R. Civ. P. 4. Specifically, Attorney Moroni held himself out as a proper agent to receive service.

It is true that service of the Supplemental Complaint was made on Attorney Moroni. Normally, an attorney is not authorized to receive service of process solely by reason of the attorney's status as counsel. *Durbin Paper Stock Co. v. Hossain,* 97 F.R.D. 639, 639 (S.D.Fla.1982) *see also Stone v. Bank of Commerce*, 174 U.S. 412, 421 (1899) (holding attorney cannot "accept service of process which commences the action without any authority to do so from his principal").

As explained in *United States v. Bosurgi*, 343 F. Supp. 815 (D.C.N.Y. 1972), while "[a]n attorney, solely by reason of his capacity as an attorney, does not thereby become his client's agent authorized by 'appointment ... to receive service of process'" such service on the attorney is permitted where it "appear[s] that the attorney was authorized, either expressly or impliedly, to receive service of process for his client." *Id.* at 817. If "agency is to be implied, it must be implied from all the circumstances accompanying the attorney's appointment which indicate the extent of authority the client intended to confer." *Id.* at 818.

The *Bosurgi* court found that service on the defendant's attorney was proper. There, the United States filed a tax lien against a settlement fund and filed a suit on the lien in the New York federal District Court. Specifically, attorneys for SAICI, a company asserting a claim to the fund, commenced an action in New York State Supreme Court against the Bosurgis and Benedict Ginsberg, claiming that the settlement fund "is the property of and accountable to [SAICI], and seeking to have Ginsberg pay over the escrow fund to SAICI." *Bosurgi*, 343 F.Supp. 815 at 817. SAICI did not name the United States as a party to the state proceeding. Thereafter, the United States was granted leave to amend the federal complaint to add SAICI as a party. *Id.*

The United States served process of the complaint on the attorneys representing SAICI in the state court lawsuit. *Id.* SAICI challenged the service as invalid, but the district court disagreed holding that service on the attorney was permissible. *Id.* The court held:

> It is beyond question that SAICI's attorneys were retained to assert its alleged right to, and to obtain possession of, the $215,000.FN8 This retainer necessarily required the attorneys to resist the claims to the fund asserted by other parties, including the United States Government. Receipt of process by the attorney in this suit, which involves relative rights to the settlement fund, was a necessary incident of the

attorney's effort to establish SAICI's claim to the settlement fund by opposing the claims of the government, as well as those of the other claimants.FN9 Litigation with the United States must have been intended as within the scope of the attorney's authority, since to obtain the fund for SAICI, its attorneys would inevitably have to face and overcome the claim of the United States. In June 1971, when SAICI's attorneys brought the state court action, the government had already asserted its lien against the fund. The fund was held in escrow subject to any further order of this court with regard to the United States and any other claimants; and the custodian named by this court was named as a defendant in SAICI's state court suit. In sum, upon the facts here presented, SAICI's attorneys were impliedly authorized to receive service of process on behalf of SAICI, a defendant in this suit, which, insofar as SAICI is here involved, seeks to determine its rights, if any, to the settlement fund-the very object for which they were initially appointed.

*Id.* at 818 (footnotes omitted). The court went on to explain:

It is appropriate to note that in the instant litigation service upon SAICI's attorneys was not only adequate, but probably optimal. As one court noted in similar circumstances:

> "There is no fear ... that service of the summons and complaint upon [the attorney] would not be brought home to each principal. This is at times a matter of concern in these problems of service of process through claimed authorized agent. That service of process upon their lawyer would bring notice of the lawsuit to [the principals] seems beyond argument and is evident here from the motion itself in their behalf to quash the service. Also, a lawyer endowed with all the authority given as here to act and appear is about the best candidate one could choose to insure notice of a pending lawsuit."

*Id.*(quoting *United States v. Davis*, 38 F.R.D. 424, 425-426 (N.D.N.Y. 1965).

Similarly here, Attorney Moroni was actively negotiating on behalf of Kallingal, P.C. with respect to the claims against Kallingal P.C. in the District Court bankruptcy case filed prior to the Superior Court action. *See* Docket No. 30, Tang Decl., Exh. M. Part of the settlement of the bankruptcy case involved release of the Barrigada Property to the control of Kallingal, P.C. and thereafter the Kallingals as owners of Kallingal, P.C. *Id.,* Exh. J (Appellee's Brief, pp. 11-12) ("Between the time of the issuance of the Temporary Restraining Order and the Hearing on the Preliminary Injunction, the Kallingals successfully negotiated a dismissal of the Kallingal P.C. Bankruptcy . . . As a result of the dismissal, the property of the P.C. was returned to the control of the Kallingals."). The Kallingals have asserted throughout the local court proceedings that they attempted to enter into a settlement with HSBC whereby HSBC would release the mortgage on the Barrigada Property, property that was tied up in the Kallingal, P.C. Bankruptcy Proceeding. *See* Docket No. 15, Tang Decl., Exh. G.

It seems clear to this court that the Kallingals and Kallingal, P.C. retained Attorney Moroni for purposes of challenging any enforcement of the mortgage held by HSBC. Under these circumstances, Attorney Moroni was "authorized to receive service of process on behalf of Kallingal, P.C., a defendant in the Superior Court lawsuit, which, insofar as Kallingal, P.C. was involved, seeks to determine HSBC's rights to foreclose on the mortgage, which was one of the subjects at issue in the Kallingal P.C. Bankruptcy, and for which Attorney Moroni was initially appointed to negotiate. *See Bosurgi*, 343 F.Supp. at 818. The service was intended to give notice to the sole owners and principals of Kallingal, P.C., the Kallingals, who were represented throughout these proceedings by Attorney Moroni. Accordingly, service of the Supplemental Complaint on Kallingal, P.C. was proper under Guam R. Civ. P. 4.

Because Kallingal P.C. was properly served with the Supplemental Complaint, the Superior Court in fact has jurisdiction over the pending mortgage foreclosure claim.

### D. *Colorado River* Abstention Doctrine.[10]

HSBC argues in the alternative that abstention is appropriate because similar if not identical issues raised herein are pending in the Superior Court (and have been for the last 7 years). The abstention doctrine explained in *Colorado River Water Conservation District v. United States* 424 U.S. 800, 818-819 (1976) is used to determine whether to stay a federal action in favor of pending state court proceedings involving the same subject matter. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813.

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Id.* (citation and quotation marks omitted).

---

[10] "Although the doctrine is sometimes referred to as an abstention doctrine, the Supreme Court has rejected this categorization. ... Unlike abstention, which rests on 'regard for federal-state relations' and 'considerations of proper constitutional adjudication,' *Colorado River* rests on 'considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 243 (9th Cir. 1989) (quotations and citations omitted).

*Colorado River* abstention is available in order to foster the important objective of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952)). The principles of *Colorado River* are to be applied "only in situations involving the contemporaneous exercise of concurrent jurisdictions, either by the federal courts or by state and federal courts." *Kirkbride v. Continental Cas. Co.*, 933 F.2d 729, 734 (9th Cir.1991) (citations and quotation marks omitted).

Several factors must be considered when determining whether *Colorado River* abstention by the federal court would be appropriate.

> It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts.... [A] federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required. Only the clearest of justifications will warrant dismissal.

424 U.S. at 818-19 (citations omitted).

Because of the flexible approach called for by the Supreme Court, this list of factors is not exclusive, and others may be considered. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). The factors relevant to a given case are to be subjected to a balancing test:

> [T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

The application of the *Colorado River* doctrine requires a court to first address the threshold issue of whether there are parallel state and federal proceedings involving the same matter. *See id*. "Exact parallelism" between the actions is not required; instead, the actions need only be "substantially similar." *Nakash*, 882 F.2d at 1416. If the threshold question of similarity is answered in the affirmative, the court must then determine whether the sort of "exceptional circumstances" warranting a stay or dismissal are present. In analyzing the *Colorado River* abstention doctrine, the

Ninth Circuit has generally enumerated six factors for determining whether circumstances exist to warrant abstention:

> (1) whether either the state or federal court has exercised jurisdiction over a res;
>
> (2) the inconvenience of the federal forum;
>
> (3) the desirability of avoiding piecemeal litigation;
>
> (4) the order in which the forums obtained jurisdiction;
>
> (5) whether federal or state law controls the decision on the merits;
>
> (6) whether the state court can adequately protect the rights of the parties; and
>
> (7) whether forum shopping is at issue.

*40235 Washington Street Corp. v. Lusardi*, 976 F.2d 587, 588-589 (9th Cir. 1992); *see also Nakash*, 888 F.2d at 1417. The first prong of the *Colorado River* abstention test is dispositive. The Ninth Circuit has held that "in proceedings *in rem* or *quasi in rem*, the forum that first assumes custody of the property at issue has exclusive jurisdiction to proceed." *Id.*

After weighing the relevant *Colorado River* factors against the "balance heavily weighted in favor of the exercise of jurisdiction," abstention seems appropriate. *Cone*, 460 U.S. at 16. First, no question exists that there is a parallel proceeding that has been filed first in the Superior Court foreclosure action involving the same real property, that has been ongoing for years. The Superior Court foreclosure action is an ongoing *in rem* or *quasi in rem* proceeding. Likewise the later filed federal quiet title action in this court is a *quasi in rem* proceeding concerning the same piece of property.

Second, the case filed in the Superior Court was filed first and has been ongoing for years. Third, the proceedings in both cases are *in rem* or *quasi in rem*. Lastly, there is the risk of piecemeal litigation should this court rule on the matter, thereby duplicating efforts and possibly leading to inconsistent rulings as to the parties' respective rights to the Barrigada Property. "[P]iecemeal litigation is a factor that can support a stay under the exceptional circumstances test. 'Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.'" *Travelers Indemnity Co. v. Madonna,* 914 F.2d 1364, 1369 (9th Cir. 1990) (quoting *Amer. Int'l Underwriters*, 843 F.2d 1253, 1258 (9th Cir. 1988)). There clearly

are "exceptional" circumstances warranting abstention under *Colorado River*, as a result, this court stays its exercise of jurisdiction

## V. CONCLUSION

Based on the foregoing, the court finds that the Superior Court of Guam has *in rem* jurisdiction over the *res*– the Barrigada property. Therefore, this court's federal jurisdiction must yield under both the prior exclusive jurisdiction doctrine and the *Colorado River* abstention doctrine. Accordingly, the court **STAYS** this federal action under the doctrine of abstention.[11] The parties are directed to notify the court upon completion of the local court litigation.

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
  Chief Judge
Dated: Mar 25, 2011

---

[11] The court understands the Ninth Circuit's preference for district courts to stay a case rather than dismiss it under *Colorado River*. *See Coopers v. Lybrand v. Sun-Diamond Growers*, 912 F.2d 1135, 1138 (9th Cir. 1990) ("[D]istrict courts must stay, rather than dismiss, an action when they determine that they should defer to the state court proceedings under *Colorado River*.").